[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DATE OF SENTENCE: 23 JANUARY 1997 DATE OF APPLICATION: 29 JANUARY 1997 DATE OF APPLICATION FILED: 10 FEBRUARY 1997 DATE OF DECISION: 22 JANUARY 2002
Application for review of sentence imposed by the Superior Court, Judicial District of Tolland at Rockville.
Docket Numbers CR95-59185; CR95-59111; CR95-59897; CR95-59187 
CR95-59112.
John McGrath, Esq. For the Petitioner.
Sandra L. Tulius, Esq. For the State of Connecticut. CT Page 2402
SENTENCE AFFIRMED
 BY THE DIVISION
The records shows the Petitioner pled guilty to four counts of Sexual Assault Second Degree in violation of Conn. General Statute 53a-71 (a)(4); five counts of Risk of Injury in violation of Conn. General Statute 53-21
and two counts of Sexual Assault First in violation of Conn. General Statute 53a-70 (a)(2). The court imposed a sentence of 40 years to serve execution suspended after 25 years with 5 years probation.
FACTS
In the course of investigation of the Petitioner by the Willimantic Police, Petitioner gave a statement indicating he had had sexual relations with a boy who lived in his home from age 15 to 18. The victim stated that Petitioner had begun sexual contact with the boy before he moved into Petitioner's home. (Petitioner invited the boy, now 16, to live with him because of problems the boy was having with his parents.) The boy would shower after doing the yard work he was hired to so. After two months Petitioner began walking into the bathroom while the boy was showering. Petitioner was either naked or in his underwear.
Petitioner would, while naked, use a vibrating massager on the victim's behind and penis and masturbate while the two of them watched homosexual videos.
The victim states that in the following three years he resided with the Petitioner, on an almost daily basis, Petitioner would perform fellatio on the boy and the boy would ejaculate in the Petitioner's mouth.
On January 31, 1995, State Police were notified by the Department of Children and Families (DCF) of the sexual assault of a six year old. This child, who Petitioner met while working for a Willimantic homeless shelter, was at sometime in August of 1994, at Petitioner's home with Petitioner ostensibly babysitting the child. When the child returned that day to his mother's home, he told his mother Petitioner had put his mouth on the child's penis. The child's mother called Petitioner, who then came to her home, admitted he fondled and sucked the child's penis and begged her not to contact the authorities.
On March 15, 1995, Petitioner gave an inculpatory statement to CT Page 2403 Willimantic Police admitting the sexual assault of a 13 year old boy, these events beginning in 1991 and continuing for about 3 years.
Petitioner befriended this victim at a Willimantic homeless shelter where Petitioner was employed. The victim stated Petitioner was a friend, "like an older brother", taking him to restaurants, movies, etc. After a few months Petitioner had the victim stay overnight at his home.
Over the next several months a pattern was set with Petitioner talking about sex with the victim and then performing fellatio on the child twice weekly. When the victim was fourteen, Petitioner began to get the victim erect by fellatio and then sit on the child's penis, performing anal intercourse, and this pattern of behavior continuing through the next two years, sometimes at Petitioner's Columbia home and sometimes at the victim's Willimantic home. In some instances Petitioner would perform fellatio on the victim and then afterward request the victim urinate on him.
On the last encounter, Petitioner digitally and genitally anally raped the victim, who throughout was screaming for him to stop. After the assault, Petitioner gave the child an enema and took him home.
In March of 1995, following an inculpatory statement of Petitioner's, State Police interview a boy then age 15. The victim stated that three years before, Petitioner, known to the boy and his family through their church, asked the boy to do some yard work at Petitioner's Columbia home. After the work was finished, Petitioner told the boy he could change and clean up in Petitioner's bedroom. After the boy undressed, Petitioner entered the room naked. Petitioner told the embarrassed boy "don't worry about it, your older brother (victim in 59185) has done it." Petitioner then said his back was hurting and asked the victim to massage his back with a vibrator. The victim did this, and then Petitioner reciprocated. Petitioner then began to fondle the child's genitals for several minutes, during which time the child asked Petitioner to stop. Petitioner stopped and told the victim to go take a shower. Petitioner then got into the shower and the victim got out. Petitioner told the victim to tell no one of these events.
At the hearing counsel for the Petitioner acknowledged this was a difficult case and noted that the Petitioner voluntarily entered guilty pleas. Counsel felt the sentencing court failed to take sufficient consideration of the expert reports of Scott Stevins and Dr. Kenneth Selig. Noting that Dr. Selig weighed the Petitioner's long history of pedophilia, his mental health including suicide attempts, he still recommended outpatient treatment and felt that prison would not help the Petitioner. At minimum, counsel felt the sentence was excessive and that CT Page 2404 the Petitioner should have been put on probation earlier.
Petitioner, when he addressed the panel, acknowledged the harm he caused to the children and reaffirmed to the panel that he avoided trial to spare the children further anguish.
The attorney for the state felt that the sentence imposed was fair and equitable, calling this case fact pattern outrageous and calling the Petitioner's remorse false, noting that the Petitioner sent the sentencing judge a letter blaming the victims. She stated that the Petitioner was a pedophile that used his trust to take advantage and prey upon innocent children. Noting that his conduct was pervasive, she feels that the six year old boy was his downfall and that his conduct would have continued unabated until he was stopped by the state. She asked for an affirmance.
Pursuant to Connecticut Practice Book § 43-23 et seq., the Sentence Review Division is limited in the scope of its review. The Division is to determine whether the sentence imposed "should be modified because it is inappropriate or disproportionate in the light of the nature of the offense, the character of the offender, the protection of the public interest and the deterrent, rehabilitative, isolative and denunciatory purposes for which the sentence was intended."
The Division is without authority to modify a sentences except in accordance with the accordance with the provisions of Connecticut Practice Book § 43-28 et seq., and Connecticut General Statute §51-94 et seq.
In reviewing the transcript of the sentencing hearing we find the court taking sufficient consideration of the reports the experts have provided for sentencing options. The conduct the Petitioner was convicted of was vile and destructive in its application. Children as young as six years old who are subjected to sexual predators carry that harmful distinction throughout life. The trial court fashioned a sentence to reflect the harm to the victims and society.
THE SENTENCE IS AFFIRMED.
Norko, J.
Klaczak, J.
Miano, J.
Norko, J., Klaczak, J. and Miano, J. participated in this decision. CT Page 2405